UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | |
| v. | ) ) | Case No. 2:24-cr-000398-SLB |
| **KEENA DEON CREER** | ) ) | |

## MEMORANDUM OPINION SUPPORTING THE COURT'S ORDER PRIOR TO TRIAL DENYING DEFENDANT'S MOTION TO DISMISS (DOC. 32)

Before the trial, the court held an evidentiary hearing on Defendant's Motion to Dismiss or Alternatively, for Remedial Trial Measures. (Doc. 32).[1] Defendant argues the Government failed to properly disclose and/or preserve evidence that was material to his defense following multiple permissible requests under Rule 16(a)(1)(E).

<u>Delay of Production of Marked Patrol Vehicle's Dash Camera Footage</u>

Following his initial appearance, counsel for Defendant contacted the Government to inquire about the patrol unit's camera footage from September 5, 2023. At the time of the events in question, the police report written by Task Force

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

Officer Stewart stated the patrol unit's camera was not functioning properly and therefore, no video footage existed. Defense counsel then inquired if any responding law enforcement officers were wearing body cameras, and Government counsel responded that there was no body worn footage related to the event either.

In October of 2025, over two years after the event, defense counsel filed a subpoena for any footage as well as the footage retention policies of the Jefferson County Sheriff's Office. On November 4, 2025, the Government produced patrol unit footage from the September 5, 2023 detail, a new report from Task Force Officer Stewart, and an evidence audit log of the footage. The audit log showed the footage was uploaded into the system on September 14, 2023.

Rule 16 requires the Government to allow a defendant to inspect any evidence in the Government's possession or control that is (1) material to preparing a defense; (2) intended to be used in the Government's case-in-chief; and (3) obtained from or belongs to the defendant. R. Crim. P. 16(a)(1)(E). This is a continuing obligation, and if a party fails to comply, it is within the court's discretion to issue sanctions or remedies. Factors for the court to consider "are the reasons for the Government's delay in affording the required discovery, the extent of prejudice, if any, the defendant has suffered because of the delay, and the feasibility of curing such prejudice by granting a continuance or, if the jury has been sworn and the trial has

begun, a recess . . . [and] whether the prosecutor acted in bad faith . . . ." *U.S. v. Fernandez*, 780 F.2d 1573, 1576 (11th Cir. 1986) (internal quotations omitted).

There is no evidence that the Government acted in bad faith in the delay of the discovery of the existence of the video. The government notified the defense of the video evidence as soon as it was discovered—almost one month prior to the start of trial—giving the defendant ample time to consider the new evidence for his defense. The defendant has not established incurable prejudice due to the delay in receiving the video evidence and dismissal is not proper regarding this evidence.

<u>Failure to Preserve JCSO's Vice and Narcotics Radio Channel Recording</u>

The defendant subpoenaed Task Force Officer Stewart for any recordings of the September 5, 2023 events in April 2025. When Task Force Officer Stewart received the April 2025 subpoena for recordings, he was unaware of the recordings and under the impression that the Vice and Narcotics Unit Channel was not recorded at all. As he was working with Jefferson County Sheriff's Office and no Birmingham Police officers were involved in this case, he had no reason to believe that he should check with Birmingham Police Department instead of Jefferson County Sheriff's Office. Task Force Officer Stewart stated that no recordings existed, because in good faith, he was not aware that they did.

Jefferson County Sheriff's Office (JCSO) and Birmingham Police Department (BPD) operate several radio channels together, and the recordings are stored through BPD. JCSO VNU (Vice and Narcotics Unit) Radio channel is encrypted, and the channel does not go through dispatch like a typical police radio, therefore, there are no transcripts of these recordings. Instead, the channel is recorded as a "party line"—meaning all the radio transmissions throughout the day are continuously recording. These recordings are retained for two years and then recorded over.

The Government provided testimony that the recordings of the VNU channel cannot be easily accessed. To access the recordings, an officer must submit a formal request to BPD, not JCSO, and many JCSO personnel are unaware of the process or the existence of the recordings. Even when granted access, the recordings are not saved in an easily searchable manner (for instance, by case number or defendant name) but rather by the date.

When Sergeant Blanding received a subpoena in October of 2025, he too thought the radio was not recorded. Only when Sergeant Blanding checked with his supervisor did he learn that the VNO channel was recorded and stored by BPD E-911, not JCSO E-911, but had already been recorded over on September 5, 2025.

To establish a violation for the deletion of the Vice and Narcotics Unit audio recordings, Defendant must show that (1) they possessed an exculpatory value that

4

was apparent before they were destroyed; and (2) they were of such a nature that Defendant would be unable to obtain comparable evidence by other reasonably available means. See *California v. Trombetta*, 467 U.S. 479, 489 (1984). "[F]ailure to preserve 'potentially useful evidence' does not violate the due process clause unless a criminal defendant can show bad faith on the part of the police." *Illinois v. Fisher,* 540 U.S. 544, 547-48 (2004).

Defendant cannot establish that the audio evidence would likely contribute to his defense, only that the evidence would be potentially useful. When the evidence is only "potentially useful" to the defense, a defendant must establish a showing of bad faith. Here, the record does not reflect an allegation of "a conscious effort to suppress exculpatory evidence" by the JCSO or the Government. *Trombetta*, 467 U.S. at 488. As a remedy, Defendant was permitted during the trial to cross examine Government witnesses regarding the deletion of the audio transmission. As the defendant failed to establish bad faith by the Government, dismissal is not warranted due to the failure to discover and produce audio evidence.

The Motion to Dismiss (doc. 32) was denied on the record prior to trial.

**DONE** this 3rd day of December, 2025,

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE